### MILLIGAN'S HEIRS vs. HARGROVE.

APPEAL from the court of the sixth district.

PORTER, J. delivered the opinion of the court. This action is in relation to a tract of land which the petitioners claim in virtue of a title emanating from the Spanish government. The defendant's title is founded on a purchase from the United States.

The plaintiffs' has also been confirmed by our government, so that the main question in the cause was, as to its location. On this point,

*Plats of survey, unless issuing with the title, or assented to by one of the parties, do not make evidence per se. The right of pre-emption accorded by the act of congress of 1814, is not such a title as enables the settler to plead prescription before the time he purchases.*

Western Dist
Oct. 1827

MILLIGAN
vs.
HARGROVE.

a vast mass of contradictory evidence was given in the court below, and a jury, to whom the case was submitted, found for the defendant.

According to the well-settled jurisprudence of this court, that verdict, founded on doubtful testimony, must prevail, unless it should appear, some errors in law were committed, in placing the evidence before the jury.

The plaintiffs complain of several;—in the admission of illegal testimony, and in the charge of the court.

On the trial, the defendant offered in evidence, a plot of survey executed by the principal deputy-surveyor of the United States, purporting to be a true representation of the surveys of the private claims, therein specified, and of the manner and extent in which they interfere with each other, as they have been surveyed and returned to the office by the deputy surveyors." This document was objected to on the grounds " that it constituted no part of the defendant's title, that it was not such a plot as the officer certifying it had a right make, so as to render it proof against parties who had no notice in relation to it, and that no plot can be admitted in evidence, which is not made un-

der an order of court, and the parties to be af_
fected, thereby, notified of the time of making

the same.

There arises frequently, in the inferior courts, confusion, in relation to the introduction of plots of survey in evidence; and that confusion, and the errors consequent thereon, proceed from giving them a higher degree of importance than they are, in fact, and in law, entitled to; and from not distinguishing the use that may be made of them, in applying testimony, instead of considering them proof in themselves. Nothing can be clearer, than that what is said, and done by third parties, cannot be evidence for or against those who are litigating their rights before a court of justice. It follows, therefore, that a representation in the form of a plot presenting to the eye, a picture, as it were, of that which has been done by others, cannot be evidence. But although not legal proof, it may be used by the parties to explain the evidence, and the court to apply it. When witnesses give testimony how lines run, and how they intersect and interfere with each other, it is almost impossible to understand them without a diagram, which will enable those who are called on to decide, to follow with the eye the testimony

Western Dis. that is received in relation to them.  Hence
October,1827.
it is,  that in  almost all  contested cases of this
MILLIGAN kind, courts direct surveys to be made; not, as
vs.
HARGROVE is frequently supposed, in the intention that the
lines which the surveyor may run, and repre-
sent on paper, at the desire of either plaintiff or
defendant, should  be  evidence; but to enable
the court to understand  and  apply  the proof,
which either party may produce, in support of
the lines contended for.   The notice generally
directed  to  be  given of the  time and place of
making these surveys, is  to enable the parties
to have their pretensions exhibited, and to en-
able them the better  to detect any  errors into
which their  adversary may fall.   But though
such a direction is extremely proper, when the
making of the survey is within the controul of
the court, it does not follow that one executed
without notice, may not be referred to, to ena-
ble an application to be made of the proof giv-
en in relation to those lines, when there is evi-
dence before the court, that these lines are faith-
fully delineated on the plot.

When the survey issues with the title, or af-
terwards, if it makes a part of it, it becomes evi-
dence, under another rule.   But with this ex-
ception, no survey is proof *per se*, against par-

ties in a court of justice, unless it appears, they have assented to it, as containing the truth. In this case, the survey which made no part of the title, was admitted to go to the jury as evidence for the defendant, and against the plaintiffs, and in this we think there was error.    The repre. sentation made in the office books of the United States, of the stream on which the *locus in quo* was situated, and the manner in which the adjoining titles were located, was not proof against the plaintiff; it was *res inter alios acta.*

The next question to be examined, arises out of an exception to the opinion which the judge expressed to the jury in relation to the defendant's plea of prescription.   He charged the jury " that the right of pre-emption under the act of congress of 1814, vests such a title from the date of it as may be the basis of a ten years' prescription, this opinion grows out of the views of the supreme court upon a like plea, under the act of 1805."

The act of congress, which, in the opinion of the judge formed a proper basis for prescription, provides that every person, or the legal representatives of every person of certain settl-

Wester Dis.
October,1827.

MILLIGAN
*vs.*
HARGROVE

ers therein described " shall be entitled to pre-emption in the purchase thereof, under the same restrictions, conditions, provisions, and regulations, in every respect as directed by the act," &c., &c., 1 *Mart. Dig.* 352, *sect. 5.*

To enable the prescription of ten years to be successfully pleaded, there must be possession, good faith, and just title. The latter is designated to be that which in its nature, is translative of property. Tried by that test, this law does not confer a title; it only holds out to the party, a right ro acquire one. It gave him an opportunity to obtain one if he chose, but made his right depend on his giving his assent, and paying the price. The case cannot be distinguished from an offer from an individual to sell, with a promise not to sell for a certain time, to another, where it is clear that he to whom the proposal is made, is not the owner until he closes with the offer. The promise to sell, only amounts to a sale when there exists a reciprocal consent of both parties, as to the thing, and the price, nothing here shews the consent of the defendant, until the time when he entered the land, and paid the purchase money. *C. Code,* 346, *art. 9.*

The case decided by this court, under the

act of 1805, though alike, is not the same.—

There, the act of Congress gave a title to settlers who had an inchoate right under the Spanish government. Nothing was to be done by the individual in possession; it was not, as in this, conferred if he paid the price, but because he had already settled and occupied. The moment the law passed, the possessor had a right to consider himself the owner; the certificate he might afterwards obtain, was but the evidence of it. That act of congress gave the title; this gave it, if the party in possession, chose to purchase. In the case referred to, we said, nothing depended on a condition to be accomplished *in futuro.* Here, every thing material did, and that condition was, an assent to the offer to sell, and the payment of the price.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that this case be remanded to the district court, with directions to the judge *a quo* not to admit the plot of survey marked T, and not to charge the jury, that the defendant has a good title by prescription under the act of congress of 1814;

and it is further ordered, adjudged, and decreed, that the appellee pay the costs of this appeal.

*Scott* for the plaintiff, *Boyce* for the defendant.